IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FARADAY 100 LLC C/O
IHA PARTNERSHIP,

        Plaintiff,

vs.                                                                    No. 1:20-cv-00767-WJ-SCY

ACUITY, A MUTUAL INSURANCE COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ACUITY'S MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS

THIS MATTER comes before the Court upon Defendant Acuity, a Mutual Insurance Company's ("Acuity") Motion for Sanctions for Discovery Violations, filed June 4, 2021 (**Doc. 46**) (the "Motion"). The Parties have given the Court their written arguments, and briefing is complete on this matter. *See* Doc. 49 (Response); Doc. 52 (Reply); and Doc. 53 (Notice of Briefing Complete). Having reviewed the pleadings, applicable law, and argument of the Parties, the Court finds that the Motion's request for attorney's fees and costs associated with Plaintiff Faraday 100 c/o IHA Partnership's ("Faraday") discovery violations, specifically the costs and fees related to the filing of this Motion and the deposition of Timothy Miller, is well-taken, and therefore the Motion is GRANTED IN PART. The Court finds that the Motion's request for attorney's fees and costs associated with third party discovery and its request that the jury receive an adverse inference instruction are not well-taken, and therefore the Motion is DENIED IN PART. Further, the Court uses this ruling as an opportunity to warn Plaintiff Faraday's counsel that if further evidence of discovery violations is uncovered in this case, additional sanctions including dismissal with prejudice may be warranted.

1

## Background

This lawsuit arises out of an insurance contract dispute between the Parties. In July of 2018, a large hailstorm swept through Albuquerque, New Mexico. Doc. 46 at 3; Doc. 49 at 2. Faraday, who at the time owned a commercial property at 4322 4th Street NW, Albuquerque, New Mexico (the "Property"),[1] claims that the Property's roof and HVAC systems were damaged by the storm and that Acuity wrongfully denied Faraday's insurance claim for property damage. Doc. 46 at 3; Doc. 49 at 2. Consequently, Faraday filed a complaint against Acuity in state court[2] on July 20, 2020 for negligence,[3] breach of insurance contract, violation of the New Mexico Unfair Insurance Claims Practices Act, and bad faith actions. *See* Doc. 1-1. Faraday claims that Acuity wrongfully denied the insurance claim by concluding, allegedly in bad faith, that there was no hail damage to the Property. After the claim was denied but prior to the filing of the lawsuit, Faraday retained the services of Allstar Public Adjuster, LLC ("Allstar"),[4] whose adjusters recommended comprehensive repairs to the Property's roof and estimated damages to the Property of $557,336.69. *Id.* ¶¶ 12-15.

After litigation commenced,[5] Acuity served its First Set of Interrogatories and Requests for Production on Faraday on September 24, 2020, and Faraday provided its answers, objections, and

---

[1]    Faraday sold the property in January of 2021, approximately six months prior to the filing of its complaint against Acuity.

[2]    This action was originally filed in the Second Judicial District Court, County of Bernalillo, State of New Mexico as Civil Action No. D-202-CV-2020-04147.

[3]    The negligence claim was dismissed on January 20, 2021 pursuant to stipulation by the Parties. Docs. 27 & 28.

[4]    The Motion provides a brief description of the role of public adjusters. In 2017, the New Mexico legislature adopted Senate Bill 88, which defined "public adjusters" a new category of adjusters who work on behalf of the insured to adjust claims. *See* Doc. 46 at 2.

[5]    The facts provided in this paragraph are a reiteration of the procedural background provided by the Court in its Order Granting Defendant's Motion to Compel (Doc. 30).

responses on November 6, 2020. On December 2, 2020, Acuity sent Faraday a good faith letter, requesting supplemental responses by December 9, 2020. Counsel for Faraday responded to the good faith letter, stating that "[w]e will review the items raised and supplement as necessary by the date you've proposed." By December 22, 2020, Acuity had not received any of the promised supplemental responses, so it filed a motion to compel. The Court granted the motion to compel on February 12, 2021, ordering Faraday to supplement the requested information to Acuity by February 26, 2021. *See* Doc. 30 (Order Granting Defendant's Motion to Compel, hereinafter the "February 12th Order"). The February 12th Order notes that "[Faraday] appears to concede that supplementation is necessary, but failed to supplement in the time frame to which it agreed, failed to request additional time, and failed to supplement at least as of the end of the briefing period." *Id.* at 4.

Approximately four months later, Acuity filed the instant Motion, contending that Faraday failed to properly supplement its discovery responses despite the Court's order to do so. Acuity states that the following discovery failures occurred after the Court issued its February 12th Order and have impeded litigation:

- Faraday failed to timely supplement under the February 12th Order, only providing additional discovery responses on March 2, 2021, upon prompting by Acuity. Faraday counters that the responses were untimely solely due to an error with the email system, that once discovered spurred a prompt correction by Plaintiff's counsel. *See* Doc. 46-1 (March 2, 2021 email from Sonya R. Burke to Plaintiff's counsel); Doc. 49-1 (March 2, 2021 email from paralegal for Plaintiff's counsel to Sonya R. Burke).

- Faraday's supplementation, when finally furnished, contained multiple relevant and responsive documents that were not produced earlier, including emails and text messages between Faraday, Allstar, its roofing contractor, Quality Masters Roofing ("Quality Masters"), and the January 2020 purchaser of the Property, Adobe Rio Investments LLC ("Adobe Rio"). *See* Docs. 46-2 (relevant portions of Plaintiff's Supplemental Discovery Responses) & 46-3 (relevant portions of Plaintiff's Email Production, Faraday 6–11 and 197–214).

- When Quality Masters responded to Acuity's third party subpoena on March 26, 2021, the

3

production revealed numerous text messages and emails with Faraday, Faraday's counsel, and Allstar regarding the claim, the instant lawsuit, claimed damages, and photographs of interior water damages. Up to this point, these communications, which were in the possession of Faraday, or Faraday's agents or counsel, had never been produced by Faraday. *See* Doc. 46-5 (relevant portions of Allstar Resp. to Subpoena and Quality Masters Resp. to Subpoena).

- On March 29, 2021, Acuity deposed Faraday's 30(b)(6) corporate representative, Timothy Miller. In response to Acuity's discovery request which sought all communications and text messages related to the subject claim, Mr. Miller searched his computer and found an email chain from August 2019 that was never produced. The August 2019 emails pertain to Mr. Miller learning about the alleged roof damage through a discussion about the results of a pre-sale inspection. Mr. Miller also produced a general ledger documenting expenses for the ownership of the property, a real estate disclosure identifying issues with the property, additional emails between Mr. Miller and Quality Masters, and an email exchange between Allstar and Quality Masters that was forwarded to Mr. Miller. *See* Doc. 46-7 (relevant excerpts of Dep. of Timothy Miller); Doc. 46-8 (Objection, Resolution, Notice, and Waiver Agreement); Doc. 46-9 (Feb. 8, 2020 to Mar. 13, 2020 emails).

- On April 7, 2021, Acuity deposed Caid Riggin, the public adjuster from Allstar who handled this claim. When Acuity's counsel confronted Mr. Riggin about Allstar's failure to produce any communications regarding the claim in responding to its third party subpoena, Mr. Riggin spent a portion of his deposition uploading communications he had with Faraday and Faraday's counsel. Mr. Riggin also produced emails between Allstar and Quality Masters. Faraday's counsel was copied to several of these unproduced communications. *See* Doc. 46-10 (relevant excerpts of Dep. of Caid Riggin); Doc. 46-11 (Feb. 8–10, 2020 emails); Doc. 46-12 (Dec. 11, 2019 email).

- After the 30(b)(6) deposition of Timothy Miller, Acuity decided to subpoena Adobe Rio, the owner of the Property when this lawsuit was filed. Adobe Rio responded with 433 pages of documents regarding the condition of the Property, including documents provided by Mr. Miller that had never been produced in this litigation. Several of the documents produced by Adobe Rio contradict Faraday's earlier sworn discovery responses.[6] Further, a batch of communications from a previously undisclosed October 2020 email chain shows that Faraday's counsel was communicating with the new property manager of the Faraday Apartments regarding the storm-related damage and the timeline for this litigation. *See* Doc. 46-13 (Adobe Rio Resp. to Subpoena, 000009, 000017-18, 000277).

---

[6] Acuity provides two instances in which it claims material was uncovered that contradicted Faraday's earlier statements. In the Supplemental Response to Interrogatory No. 8 and during his deposition, Timothy Miller swore that prior to purchasing the Property, "[Faraday] conducted its own inspection of the property and did not hire a third-party pre-purchase inspector." Doc. 46-2 at 9; *see also* Doc. 46-7 (Miller Depo.) at 38:23-39:14. Documents produced by Adobe Rio show that on February 11, 2016 Criterium Building Inspection Engineers performed such an inspection on Mr. Miller's behalf. Doc. 46-13 at 1. Acuity also points to what it believes is a contradiction between the Response to Interrogatory No. 2, in which Faraday swore that it had not been involved in "any litigation or out-of-court claim or settlement" in the last ten years, and the fact that the Property's new owner filed a claim for roof damage with Travelers, which was ultimately denied. *See* Docs. 46-2 at 1 & 46-13 at 5. The Court does not consider this second example as demonstrating an inconsistency with Faraday's response.

Acuity claims this conduct "flies in the face of open and honest discovery that is required of litigants." Doc. 46 at 10. The Court agrees.

## Legal Standard

Acuity moves for sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), which gives district courts the authority to issues sanctions against a party for failure to comply with discovery obligations. The Tenth Circuit has concluded that Rule 37(b)(2) serves a predominantly punitive purpose. *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996). Rule 37(b)(2) lists several sanctions that include, but are not limited to, prohibiting a disobedient party from supporting claims or defenses or introducing designated matters into evidence, striking pleadings in whole or in part, staying further proceedings, dismissing the action, or treating the failure as contempt. Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). The Tenth Circuit has also made clear that Rule 37(b)(2) grants district courts substantial discretion to craft orders to serve the interests of justice, including ordering costs and fee shifting. *Olcott*, 76 F.3d at 1555. The district court's discretion to choose a sanction is limited in that the chosen sanction must be both "just" and "related to the particular 'claim' which was at issue in the order to provide discovery." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707 (1982)). In addition to being "in the interests of justice," sanctions under Rule 37(b)(2) must be "proportional to the specific violations of the rules." *Olcott*, 76 F.3d at 1557. A district court must generally limit its sanction to those expenses and attorney's fees directly attributable to a party's sanctionable conduct, i.e. but for the party's actions, the funds to pay the cost would have been allocated differently. *Id; see also* Fed. R. Civ. P. 37(b)(2)(C).

Even though Acuity is not seeking the dismissal of this action, Parties agree that the Court should consider the factors set forth in the Tenth Circuit's *Ehrenhaus* opinion, namely "(1) the

degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance . . . ; and (5) the efficacy of lesser sanctions." 965 F.2d at 921 (listing factors a court should ordinarily consider before choosing dismissal as a just sanction). As the *Ehrenhaus* opinion notes, "[t]hese factors do not constitute a rigid test; rather, they represent a criteria for the district court to consider." *Id.* The Court will consider these factors when ruling on the Motion, while keeping in mind that Acuity is seeking attorney's fees and costs as well as an adverse inference instruction and is not seeking the harsher sanction of dismissal.[7]

**Discussion**

I. **Requiring Faraday to Pay Acuity's Requested Attorney's Fees and Costs for the filing of this Motion, the March 29th 30(b)(6) deposition of Timothy Miller, and conducting a second 30(b)(6) deposition is a Just and Congruent Sanction for its Discovery Violations. However, Attorney's Fees and Costs will not be Awarded for Third Party Discovery.**

In considering the Tenth Circuit's framework for Rule 37(b)(2) sanctions and the *Ehrenhaus* factors in light of the Parties' arguments and the record in this case, the Court determines, based on the findings below, that imposing Acuity's requested attorney's fees and costs associated with the filing of this Motion and the March 29, 2021 deposition of Timothy Miller, as well as the expense of conducting a second 30(b)(6) deposition upon Faraday, is a just and congruent sanction for Faraday's discovery violations. *See Morse v. County of Los Alamos*, 2009 WL 5220170 at *3 (D.N.M. 2009). ("Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make.") (quoting

---

[7] The Motion argues that, even though Acuity is not seeking a dismissal of this case, Faraday's actions would still make this sanction appropriate. The Court, however, will not at this point make a determination on whether Faraday's conduct rises to this level.

*Ehrenhaus*, 965 F.2d at 920). However, the Court is unable to make the finding that Faraday's actions caused Acuity to issue third party subpoenas to Allstar, Quality Masters, and Adobe Rio. In fact, the Motion fails to alert the Court that Acuity engaged in any third party discovery solely due to Faraday's production failures and, in general, suggests that Acuity did not take actions beyond its normal discovery obligations. *See* Doc. 46 at 5 ("While awaiting Plaintiff's supplementation, Acuity sent third-party discovery requests to parties referenced in what minimal discovery Plaintiff did provide . . . ."); Doc. 46 at 8 ("Following the Faraday 30(b)(6) deposition during which it became clear there was still documentation that had not been produced in this case, Acuity subpoenaed Adobe Rio Investments LLC, the owner of the Faraday Apartments when this litigation was filed."). Thus, the expense incurred as a result of this third party discovery will not be shifted to Faraday. *See Olcott*, 76 F.3d at 1557 (affirming the district court's use of the "but for" standard in its determination that fee shifting sanction was just and proportional); *see also* Fed. R. Civ. P. 37(b)(2)(C) (stating that circumstances may make an award of expenses unjust).

In developing the record to support its imposition of sanctions, the Court will now turn to an analysis of the *Ehrenhaus* factors. First, Acuity has been prejudiced. Faraday's withholding of discoverable material caused defense counsel to unnecessarily expend time and resources. The record shows that Acuity uncovered discoverable material, possessed by Faraday, nearly every time it conducted a deposition or engaged in third party discovery, thus leading to unnecessary delay and generating uncertainty that undermined the discovery phase of this litigation. Acuity's counsel was also forced to depose a 30(b)(6) corporate representative who appeared to be unprepared to adequately testify about this matter. *Cf. ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 U.S. Dist. LEXIS 90678, at *6 (D. Kan. Dec. 6, 2007) (in context of sanctions under Rule 37(d), a party that produces an unprepared witness for a 30(b)(6) deposition

"is tantamount to failure to appear at a deposition").

Second, the Court finds that Faraday's counsel has interfered with the judicial process by ignoring the Court's February 12th Order. *See Jones v. Thompson,* 996 F.2d 261, 265 (10th Cir. 1993) (finding a sufficient amount of interference with the judicial process when plaintiffs "repeatedly ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party.") This finding is not based on the tardy supplemented responses, which Faraday's counsel chalks up to a failure of its email system. The support for this finding comes from the fact that Acuity unearthed relevant, discoverable material that was or would have been in Faraday's possession long before the Court ordered deadline passed. Specifically, Acuity convincingly points to documents and communications produced at the Miller and Riggin depositions and in Quality Masters and Adobe Rio's third party subpoena responses. In its response brief, Faraday acknowledges that Acuity received evidence not produced in the supplemental responses but argues, without citing any authority, that it was Acuity's obligation to file an additional motion to compel rather than a move for sanctions. The Court rejects this argument.

Third, Faraday is culpable for its discovery violations. Indeed, the record provides no justification for Faraday's withholding of these documents and communications. Federal Rule of Civil Procedure 34 requires a party to produce designated documents that are "in [its] possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the action." *City of Las Cruces v. United States*, No. 17-CV-809 JCH/GBW, 2021 WL330062, at *8 (D.N.M. Feb. 1, 2021) (citations omitted); *see also*

*Landry v. Swire Oilfield Servs.*, LLC, 323 F.R.D. 360, 382 (D.N.M. 2018) ("Simply put, if a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it."). Acuity's Motion and supporting exhibits demonstrate that Faraday, by virtue of its agents, was in possession of the complained about documents and communications. Therefore, Faraday is entirely culpable in failing to produce these discoverable materials in its responses to Acuity's discovery requests.

Fourth, the *Ehrenhaus* analysis requires the Court to consider whether it has issued a prior warning of the likely sanctions. *Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009). Unlike the movants in *Ehrenhaus* and *Garcia*, Acuity is not seeking dismissal of Faraday's case at this point. Thus, the Court finds it unnecessary to consider the fourth *Ehrenhaus* factor. Even if review of the record under this factor is required, the Court considers the February 12th Order to be an adequate warning.

Finally, the Court must consider the efficacy of lesser sanctions. The Court has already granted Acuity one round of attorney's fees for filing its motion to compel. *See* Doc. 36. This prior monetary award clearly has not persuaded Faraday to satisfy its discovery obligations. The contents of the material left out of Faraday's supplemental responses and the lengths Acuity had to go to in order to obtain this material show the Court that lesser sanctions would not provide an effective remedy. Further, shifting the cost related to this Motion, the March 29, 2021 deposition of Timothy Miller, and a second 30(b)(6) deposition to Faraday is allowable under Federal Rule

of Civil Procedure 37(b)(2)(C)[8] and in line with Federal Rule of Civil Procedure 37(c)(1).[9]

## II. The Court will not Issue an Adverse Inference Jury Instruction

"Jury instructions on the adverse inference rule are permissible in federal court when there exists an 'unexplained failure or refusal of a party . . . to produce evidence that would tend to throw light on the issues.'" *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 406 (10th Cir. 1993) (quoting *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96, 19 V.I. 642 (3d Cir. 1983)). "For the adverse inference rule to be applicable, certain factors must generally be present." *Gilbert*, 989 F.2d at 406. The Tenth Circuit has cited the following factors as relevant: "'(1) it appears that the documentary evidence exists or existed; (2) the suppressing party has possession or control of the evidence; (3) the evidence is available to the suppressing party, but not to the party seeking production; (4) it appears that there has been actual suppression or withholding of evidence.'" *Id.* (quoting *Evans v. Robbins*, 897 F.2d 966, 970 (8th Cir. 1990)).

Considering these factors from *Gilbert*, in particular the first and third factors, in light of Faraday's actions in this case, the Court finds that an adverse inference instruction is not warranted at this time. As Faraday's counsel notes, Acuity has not presented the Court with a compelling

---

[8] Rule 37(b)(2)(C) states in full:

(C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

[9] Rule 37(c)(1), titled "Failure to Disclose, to Supplement an Earlier Response, or to Admit" states in full:

(1) *Failure to Disclose or Supplement*. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

theory for the existence of other, still undiscovered, documentary evidence. Doc. 49. Stated another way, Acuity's briefing fails to indicate, beyond mere speculation, what additional evidence may still be in the hands of Faraday and its agents or counsel. Rather, it appears that, through its tireless efforts, Acuity's counsel has already secured virtually all of the documents discoverable in this case. However, should evidence of further discovery violations surface, the Court would likely be inclined to take harsher steps, including dismissal of this case.

## Conclusion

**THEREFORE**, for the reasons discussed in this Memorandum Opinion and Order, the Court hereby GRANTS IN PART and DENIES IN PART Defendant Acuity's Motion for Sanctions for Discovery Violations.

**FURTHERMORE,** Plaintiff Faraday is hereby ordered to pay Defendant Acuity's attorney's fees and costs related to the filing of this Motion and the March 29, 2021 30(b)(6) deposition of Timothy Miller.

**FURTHERMORE,** Defendant Acuity shall be allowed to conduct a second 30(b)(6) deposition at Plaintiff Faraday's cost.

**FURTHERMORE**, within fourteen (14) days of the entry of this Order, Defendant Acuity shall file an affidavit outlining the fees and costs it incurred in attending the March 29, 2021 deposition of Timothy Miller and filing this Motion. Within fourteen (14) days after Defendant Acuity files its affidavit, Plaintiff Faraday may file any objections it has to the amount Defendant requests.

**FURTHERMORE**, should Defendant Acuity conduct a second 30(b)(6) deposition, it shall file an affidavit outlining its requested fees and costs within seven (7) days of that deposition taking place. Within seven (7) days after Defendant Acuity files its affidavit, Plaintiff Faraday may

file any objections it has to the amount Defendant requests.

      **IT IS SO ORDERED.**

                                                                     _____
                                                                      WILLIAM P. JOHNSON
                                                                      CHIEF UNITED STATES DISTRICT JUDGE