IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FARADAY 100 LLC C/O
IHA PARTNERSHIP,

        Plaintiff,

vs.                                                          No.  1:20-cv-00767-WJ-SCY

ACUITY, A MUTUAL INSURANCE COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S**
**"COSTING EXPERT" FRED LUPFER**

THIS MATTER comes before the Court upon Defendant Acuity, a Mutual Insurance Company's ("Acuity") Motion to Exclude Testimony by Plaintiff Faraday 100 LLC C/O IHA Partnership's ("Faraday") "Costing Expert" Fred Lupfer, filed June 17, 2021 (**Doc. 48**). Having reviewed the Parties' briefings and the applicable law, the Court finds that the Motion is not well-taken and, therefore, it will be DENIED.

**Background**

This lawsuit arises out of an insurance contract dispute between the Parties. In July of 2018, a large hailstorm swept through Albuquerque, New Mexico. Faraday, who at the time owned a commercial property at 4322 4th Street NW, Albuquerque, New Mexico (the "Property"), claims that the Property's roof and HVAC systems were damaged by the storm and that Acuity wrongfully denied Faraday's insurance claim for property damage. Doc. 48 at 1–2. Consequently, Faraday filed a complaint against Acuity in state court on July 20, 2020 for negligence, breach of insurance contract, violation of the New Mexico Unfair Insurance Claims Practices Act, and bad faith actions. *See generally* Doc. 1-1. Faraday claims that Acuity wrongfully denied the insurance claim

1

by concluding, allegedly in bad faith, that there was no hail damage to the Property. After the claim was denied but prior to the filing of the lawsuit, Faraday retained the services of All Star Public Adjuster, LLC ("All Star"), whose adjusters recommended comprehensive repairs to the Property's roof and estimated damages to the Property of $557,336.69. *Id.* ¶¶ 12-15.

The Motion seeks an order excluding the testimony of Faraday's proposed expert witness, Fred Lupfer, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Mr. Lupfer is a proffered as a "costing expert," who is planning to testify to the purported reasonableness of Caid Riggin's estimate for repairs.[1] *See* Doc. 48-1. Acuity contends that Mr. Lupfer's experience with New Mexico costing is limited to the entering of line items into a costing software ("Xactimate"), which was initially used by Mr. Riggin to provide the All Star cost estimate. Acuity claims that Mr. Lupfer is not offering an independent opinion at all and that his experience is limited to reentering (at times, incorrectly) the line items suggested by the same costing software utilized by Mr. Riggin to originate the proposed cost of repair damage to the Property. Acuity argues that Mr. Lupfer does not have the expertise required under *Daubert* to offer an opinion on costing because Mr. Lupfer did not inspect the Property's roof or HVAC units, and that his use of Xactimate and payment of the software's licensing fee does not render him a New Mexico costing expert.

## Discussion

Under the well-established standard set forth in *Daubert*, qualified expert testimony: (1) must be based on sufficient facts or data; (2) must be the product of reliable principles and methods; and (3) the expert must have applied the principles and methods reliably to the facts of

---

[1] Caid Riggin is a public adjuster with All Star. The record indicates that Mr. Riggin acted as the primary public adjuster in this matter. According to information provided by Acuity in past briefing, public adjusters work on behalf of the insured to adjust claims. *See* Doc. 46 at 2.

the case. 509 U.S. at 597; Fed. R. Evid. 702; *see also Hall v. Conoco Inc.*, 886 F.3d 1308, 1311 (10th Cir. 2018). *Daubert* provides a "flexible" framework for courts to use in their roles as gatekeepers of expert testimony. *Hoffman v. Ford Motor Co.*, 493 F.App'x 962, 974 (10th Cir. 2012) (internal citation omitted). Depending on the nature of the issues presented and the expert's particular expertise, certain factors may or may not be pertinent to an evaluation of reliability, but the purpose of the *Daubert* inquiry is always "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 975 (citing *Dodge v. Cotter Corp*, 328 F.3d 1212, 1222–23 (10th Cir. 2003); quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Neither party requests a hearing, which *Daubert* does not require where the court makes sufficient findings on the record. *See United States v. Call*, 129 F.3d 1402 (10th Cir. 1997); *Robinson v. Missouri Pacific*, 16 F.3d 1083, 1089 (10th Cir.1994) (*Daubert* analysis requires a district court to "carefully and meticulously" review the proffered scientific evidence); *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999) (a district court is granted great latitude in deciding whether to hold formal *Daubert* hearing).

Acuity challenges Mr. Lupfer's qualifications as well as the reliability and relevance of Mr. Lupfer's opinion.

**I.     Qualifications**

An expert is required to possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation." *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).

Mr. Lupfer has served as a cost expert on multiple New Mexico property insurance cases similar to the instant case, *see* Doc. 50-6, and he has seven years of experience as a licensed public

adjuster for residential and commercial losses as well as fifteen years of experience in roofing and construction, *see* Doc. 48-2.

However, Acuity contends that Mr. Lupfer's testimony falls outside the "reasonable confines" of his expertise because Mr. Lupfer has no experience as a public adjuster in the state of New Mexico or bidding on construction projects in this state, and, further, because his only information regarding New Mexico pricing is the information generated by Xactimate. *See* Doc. 48-4 at 7:11–20, 14:5–7, and 20:12–25 to 22:1–13; *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (testimony that does not fall within "reasonable confines" of expert's skill, experience or knowledge is not admissible).

It is not clear why Acuity feels that Mr. Lupfer should have experience in adjusting or contractor bidding in New Mexico in order to offer an opinion on costs associated with removal and replacement of items due to damages caused by a severe weather event. True, the fact that a witness is qualified as an expert in one field does not make him an expert in a closely related field. For example, in a cased cited to by Acuity, *Ralston v. Smith & Nephew Richards, Inc.*, the Tenth Circuit affirmed the district court's exclusion of an orthopedic surgeon who admitted that she "knew little—if anything" about the subject procedure. 275 F.3d 965 (10th Cir. 2001). Here, however, Mr. Lupfer is being called as an expert in a field in which he has had experience—and for which he is therefore qualified. *See* Doc. 48-4 at 73:1–3.

Acuity's argument regarding pricing differences is greatly exaggerated. Mr. Lupfer has testified that he has experience with how pricing in New Mexico differs from elsewhere because the New Mexico pricing structure is integrated into Xactimate using a formula based "pool[ing] the contractors in the local area to find out their current rates." *Id.* at 21:1–25 to 22:1–22. Nowhere in the Motion does Acuity suggest that the Xactimate pricing estimates are inherently faulty. Thus,

any purported "pricing differences" from state to state do not render the report inadmissible under *Daubert*.

**II.	Reliability**

Acuity next claims that Mr. Lupfer's opinions regarding the cost of replacement are unreliable because he (1) performed no meaningful independent analysis, and (2) estimated the cost of repairing all damage to interior and exterior of the building and not just damage caused by the storm.

Reliability is determined by whether: (1) testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; (3) and the witness has applied the principles and methods reliably to the facts of the case. *Smith v. Sears Roebuck and Co.*, 232 Fed.Appx. 780, 781 (10th Cir. 2007). Under *Daubert*, proposed expert testimony must be supported by "appropriate validation," that is, "good grounds, based on what is known." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (citing *Daubert*, 509 U.S. at 590).

A.	<u>Independent Research or Investigation</u>

Acuity contends that Mr. Lupfer failed to conduct independent research into the relevant market, thus rendering his opinion unreliable and inadmissible.

1.	*Reliance on Xactimate Estimate Completed by Caid Riggin / All Star*

Acuity's primary grievance against Mr. Lupfer's opinion is that Mr. Lupfer performed no meaningful investigation or analysis because he accepted as true Caid Riggin's estimate and measurements and inputted them, line-item by line-item, into the Xactimate software.

Acuity relies on two cases from the Tenth Circuit for support by comparison. In *Rodgers v. Beechcraft Corp.*, the Tenth Circuit upheld a district court order excluding an expert who opined that a pilot was "trained, qualified, experienced and capable of performing the subject mission,"

but did not conduct "independent research" into the pilot's training or speak with any of the pilot's trainers. 759 F. App'x 646 (10th Cir. 2018). In that case, however, the expert also completely ignored significant evidence that conflicted with his opinion, namely that the pilot allowed a non-pilot to operate the plane.

In *Alfred v. Caterpillar, Inc.*, the Tenth Circuit agreed with the district court's opinion of expert testimony that it was "backed by very little work and very little expertise, among other problems." 262 F.3d 1083, 1088 (10th Cir. 2001). These "other problems" included the fact that the expert gained his knowledge of the specialty on which he opined only a week prior to the trial and after he had already arrived at his opinion regarding defective asphalt pavers. *Id.*

The Court finds that the objectionable aspects of the experts' opinions in both *Rodgers* and *Alfred* are not present here and that Mr. Lupfer's reliance on Xactimate does not render his opinion unreliable under *Daubert*. As an expert, Mr. Lupfer is entitled to rely on material he did not generate himself. An expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed.R.Evid.703; *see TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (Rule 703 allows an expert to base an opinion on facts or data not admissible in evidence if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject).

Acuity does not take issue with the reliability of Xactimate software itself—only that Mr. Lupfer parroted All Star's line item entries and failed to perform any independent research of his own. However, this criticism of Mr. Lupfer's performance is not supported by the record.

Mr. Lupfer states that he came into this litigation to give expert opinion on the fact that the estimate generated by Mr. Riggin, who could not be impartial in this case, was reasonable. Doc. 48-4 at 36:3–8. He then goes on to detail how his independent methodology virtually always

produces an estimate different than that generated by the plaintiff's public adjuster. *Id.* at 36:9–15 to 37:1–25. Additionally, there is testimony that Mr. Lupfer verifies the measurements given to him by the public adjuster and takes further steps to ensure that he agrees with the line items in the public adjuster's estimate. *Id.* 53:18–25 to 54:1–15. Mr. Lupfer verified measurements by visiting the Property and by using Google Earth to examine measurements, protrusions and other features that he might have overlooked during his visit. *Id.* The further steps mentioned above include: reviewing the estimate, reviewing the building, comparing the public adjuster's line items with "what is there at the site," and putting together an estimate that will be *compared* that of the public adjuster. *Id.*

　　2. *Inspection of Property and Miscalculations*

Acuity contends that Mr. Lupfer's report is not reliable because Mr. Lupfer did not inspect the roof or inside of the Property or speak to anyone there, and because the report contains miscalculations *See, e.g., id.* at 121:2–4 ("Q: Do you have any reason to believe that tax was not already included in the $108,000 bid? A: I do not. That probably should be deleted."). However, while Mr. Lupfer did not personally inspect the inside of the Property or the Property's roof or HVAC system, he did conduct a general inspection of the grounds to take measurements and verify the information submitted to him by All Star. *See* Doc. 48-4 at 64:3–11, 87:16 to 91:4. Mr. Lupfer also viewed photographs provided by All Star to get a cumulative understanding of the damage and compare his independent opinion about the necessity and extent of repairs against Mr. Riggin's estimate. *See* Doc. 48-4 at 103:3–105:20. The Court finds that these challenges to Mr. Lupfer's opinion and report do not provided a sufficient basis for the Court to conclude that Mr. Lupfer's methodology is unreliable and inadmissible under *Daubert*.

B. <u>Causation</u>

Acuity argues that Mr. Lupfer's testimony is unreliable because it does not include any expert opinion regarding causation. Yet there is no indication that Mr. Lupfer was hired to offer an opinion on what caused the damages to the Property. By his own admission, Mr. Lupfer was not hired to, nor did he attempt to, investigate whether the Property's damage was caused by the July 2018 hail storm. Doc. 48-4 ("[July 30, 2018] was the date that was given to me, but—yes, so that's—but I didn't really rely on—I relied on the damage, not the date. That's not something I was hired to testify to, the date."); *id.* at 94:3-7-11 ("Q: You say 'from the hail/wind loss event that occurred on or about July 30, 2018' . . . That was just information that was provided to you; correct? A: Correct."). Even so, Mr. Lupfer's testimony is not devoid of causation evidence. Mr. Lupfer used the results of his review of All Star's materials and his own independent analysis, as well as his skill, knowledge, experience, education, and training as a roofing/construction professional and public adjuster to prepare his Xactimate estimate for repairs to the Property. *See* Doc. 48-4 at 64:3–11, 87:16 to 91:4. All of this evidence establishes a link to Faraday's claims.

A certain pattern emerges with respect to Acuity's objections to Mr. Lupfer's opinion: the argued deficiencies are, at worst, potential flaws and weaknesses that are all subject to cross-examination and will be weighed by the trier of fact. A plaintiff need not prove that the expert is indisputably correct, but must show only that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements. *Mitchell*, 165 F.3d at 781; *McCoy v. Whirlpool Corp.*, 379 F.Supp.2d 1187, 1197 (D. Kan. 2005) (where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of independent testing may "go to the weight, not the admissibility of the testimony") (citing *Zuchowicz v. United States*, 140 F.3d 381, 387 (2d

Cir.1998) (internal quotes omitted); *see also U.S. v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) ("[v]igorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence") (quoting *Daubert*, 509 U.S. at 596).

The Court finds that the method used by Mr. Lupfer to arrive at his opinion meets the *Daubert* standard for reliability. Any sloppiness or inaccuracies in that opinion can be tested through cross-examination and weighed by the fact-finder at trial.

### III.  Relevance and Helpfulness to Jury

Acuity's last challenge to Mr. Lupfer's opinion testimony is that it would not assist the fact-finder and instead would only confuse jurors due to purported inconsistent testimony backed by no personal expertise. The Court disagrees with this assessment. Knowledge about the cost to repair damages to the Property caused by a severe weather event is not the kind of information that is within the jury's understanding as laypeople and so Mr. Lupfer's testimony—which the Court finds to be reliable—will also be relevant and will assist the jury in rendering its decision.

### Conclusion

**Therefore,** for the reasons discussed in this Memorandum Opinion and Order, Defendant Acuity's Motion to Exclude Testimony by Plaintiff's "Costing Expert" Fred Lupfer (Doc. 48) is hereby DENIED.

**IT IS SO ORDERED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE